UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

R. SCOTT STEVENSON,

                              Plaintiff,

       -v-

TYCO INTERNATIONAL (US) INC.
SUPPLEMENTAL EXECUTIVE RETIREMENT
PLAN, TYCO INTERNATIONAL (US) INC.,
TYCO INTERNATIONAL (US) INC.
ADMINISTRATIVE COMMITTEE and TYCO
INTERNATIONAL (US) INC. SPECIAL APPEALS
COMMITTEE,

                              Defendants.

Case No. 04-CV-4037 (KMK)

OPINION AND ORDER

APPEARANCES:

Marc S. Dreier, Esq.
Meredith Alexis Pennotti, Esq.
Dreier LLP
New York, NY
*Counsel for Plaintiff/Counter-Defendant*

Christopher Alan Parlo, Esq.
Christopher Paul Reynolds, Esq.
Adam Joshua Price, Esq.
Morgan, Lewis & Bockius LLP
New York, NY
*Co-Counsel for Defendants/Counter-Claimants*

Eric G. Hoffman, Esq.
Sidley Austin LLP
New York, NY
*Co-Counsel for Defendants/Counter-Claimants*

KENNETH M. KARAS, District Judge:

       Plaintiff R. Scott Stevenson ("Stevenson") brings this action against Defendants Tyco

International (US) Inc. Supplemental Executive Retirement Plan ("Supplemental Plan"), Tyco

International (US) Inc. ("Tyco"), Tyco International (US) Inc. Administrative Committee

("Administrative Committee"), and the Tyco International (US) Inc. Special Appeals Committee

("Special Appeals Committee") stemming from his claim for benefits under Tyco's ERISA plan.

Before the Court are the Parties' competing motions regarding arbitration.  Plaintiff seeks to

enforce arbitration of the counterclaims asserted against him by Defendants, while Defendants

move to stay such arbitration.  Also, Defendant Administrative Committee has moved to dismiss

the action against it.

     For the reasons stated herein, the Court grants Plaintiff's motion to compel arbitration of

Defendants' counterclaims.  Consequently, the Court denies Defendants' motion to stay

arbitration.  However, the Court grants Defendant Administrative Committee's motion to

dismiss.

I.  Background

     A.  Factual History

     Plaintiff R. Scott Stevenson ("Stevenson") was hired by Tyco in February 1998.  (Am.

Compl. ¶ 13)  He then became a participant in the Supplemental Executive Retirement Plan

("SERP"), an unfunded plan maintained by Tyco to provide deferred compensation for certain

management and highly compensated employees.[1]  (*Id.* ¶¶ 2, 10)  Under the SERP, Tyco credited

Plaintiff's individual account with an amount equal to that which Tyco would have contributed to

Tyco's Retirement and Investment Plan if Plaintiff had been a participant in that plan, using a

formula based on his compensation in excess of the compensation limits imposed by provisions

---

     [1]Defendants assert, and Plaintiff does not contest, that the SERP is an ERISA plan.  *See* 29 U.S.C. § 1002(2)(A), (3), (36).  (Am. Compl. ¶ 4)

of the Internal Revenue Code.  (*Id.* ¶ 12)  Plaintiff's benefits under the SERP vested on the fifth

anniversary of his employment with Tyco in February 2003.  (*Id.* ¶ 16)

On March 5, 2002, Plaintiff signed a Retention Agreement presented to him by Tyco and

signed by former Tyco CEO Dennis Kozlowski, which granted Plaintiff certain benefits allegedly

separate and apart from those granted in the SERP.  (*See* Aff. of R. Scott Stevenson in Supp. of

His Mot. to Compel Arb. ¶ 6, Ex. B ("Stevenson Aff. II"))  Defendants allege that Plaintiff

engaged in insubordination during the summer of 2003.  (Defs. Tyco Int'l Ltd. and Tyco Int'l

(US) Inc.'s Countercls. Against Pl. R. Scott Stevenson ¶¶ 10-11 ("Defs.' Countercls."))

Stemming from this alleged bad behavior, Defendants assert that Plaintiff was terminated

effective immediately on September 11, 2003.  (Am. Compl. ¶ 22; Defs.' Countercls. ¶ 12)

However, Plaintiff asserts he gave notice of his intent to terminate his employment on July, 29,

2003.  (Am. Compl. ¶ 21)

Plaintiff filed a post-termination claim to receive his SERP benefits on November 23,

2003.  (*Id.* ¶ 28)  Plaintiff's claim for benefits was denied on May 20, 2004, by the Special

Appeals Committee.  (*Id.* ¶ 33)  The Special Appeals Committee was created in December 2003

to decide claims of senior officers under the SERP who were subject to allegations of

wrongdoing.  (*Id.* ¶¶ 29-30)  On May 28, 2004, Plaintiff commenced the present action to recover

his benefits under the SERP which were denied by the Special Appeals Committee.

In February 2005, after Plaintiff filed this suit, Defendants allege that they received a

mysterious letter from an attorney stating he would take Plaintiff's sworn testimony in an

"unspecified proceeding."  (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. to Compel Arb. 5

("Defs.' Opp'n Mem."))  Defendants assert they did not know the attorney that sent the letter was

3

Plaintiff's attorney.  Defendant Tyco then sought an injunction in Florida state court to stop

Plaintiff from testifying and revealing "confidential information," as forbidden in the Retention

Agreement.  (Sarelson Decl. Ex. 1)  In response, Plaintiff brought a Motion to Dismiss for Lack

of Subject Matter Jurisdiction and Compel Arbitration, invoking the arbitration clause within the

Retention Agreement.  (Sarelson Decl. Ex. 2)  Tyco withdrew its motion in April 2005, allegedly

after learning that the attorney who sent the "mysterious" letter was Plaintiff's attorney.  Plaintiff

then moved for attorney's fees, pursuant to Florida state law as well as under the terms of the

Retention Agreement.  (Sarelson Decl. Ex. 3)  The Florida court denied attorney's fees under

Florida law, and deferred ruling upon whether Plaintiff was entitled attorney's fees pursuant to

the Retention Agreement "pending a determination on the validity of that agreement by the

District Court Southern District of New York . . . ."  (Sarelson Decl. Ex. 5)

        B.  Procedural History

     Plaintiff filed this action on May 28, 2004.  On October 28, 2004, the Defendants in this

case filed a partial motion to dismiss, seeking the release of several Defendants and certain state

law claims, the latter primarily on ERISA preemption grounds.  This Motion to Dismiss was

largely made moot by Plaintiff's November 8, 2005, submission of a proposed Amended

Complaint.  The Defendants did not oppose the submission of the Amended Complaint.[2]  Thus,

---

    [2]In the Amended Complaint, Plaintiff added one new defendant (Tyco Int'l (US) Inc.
Supplemental Executive Retirement Plan (SERP)) and eliminated four (Tyco Int'l Ltd., TME
Management Corp., Tyco Int'l Ltd. Retirement Committee, and Fidelity Investments Institutional
Services Co.).  The Amended Complaint also dropped several causes of action from the original
complaint, including state law causes of action, such as breach of contract, breach of covenants
of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, and failure to pay
wages under New Hampshire law.  The two causes of action in the Amended Complaint are more
detailed allegations of the original Complaint's cause of action alleging wrongful denial of
ERISA benefits.  (Letter from Andrew J. Bernstein, Esq. to the Court Ex. A, November 8, 2005)

the only remaining motion to dismiss is that of Defendant Administrative Committee.

On June 24, 2005, Defendants filed counterclaims against Plaintiff seeking a declaratory judgment that the Retention Agreement be declared void or voidable and damages for both breach of contract and breach of fiduciary duty.  Plaintiff answered and then, on September 29, 2005, demanded that the counterclaims be submitted to arbitration due to an arbitration clause in the Retention Agreement.  Plaintiff also filed a Demand for Arbitration before the American Arbitration Association on July 29, 2005.  (Stevenson Aff. II Ex. G)  Defendants then responded with their Opposition to Plaintiff's Motion to Compel Arbitration, and initiated a Cross-Motion to Stay Arbitration.

## II.  Administrative Committee's Motion to Dismiss

### A.  Standard of Review

Defendant Administrative Committee moves to dismiss this action on the grounds that it is not a "plan administrator" and therefore may not be sued under ERISA.  (Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pl.'s State Law Claims and Claims Against Certain Defs. 5 ("Defs.' Mot. to Dismiss Mem."))  The function of a motion to dismiss is to test "the legal feasibility of the complaint."  *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).  Thus, a court should not grant the motion unless no facts could be proved by Plaintiff which would entitle him to relief.  *See Ambase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003).  When reviewing a motion to dismiss, the Court must accept as true Plaintiff's factual allegations in the complaint.  *Id*.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated

in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Discount Bank of N. Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotations omitted). Courts may also consider public records*, Tornheim v. Eason*, 363 F. Supp. 2d 674, 676 (S.D.N.Y. 2005), as well as documents alleged or referenced in, but not attached to, the complaint. *See Cortec Indus. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (noting that defendant may produce a prospectus with its motion to dismiss even though plaintiff did not attach it to the complaint); *see also 2 Broadway LLC v. Credit Suisse First Boston Mortgage Capital LLC*, No. 00 Civ. 5773, 2001 WL 410074, at *5 (S.D.N.Y. Apr. 23, 2001).

####     B.  Analysis

Plaintiff alleges two claims in the Amended Complaint: (1) that the denial of his claim was arbitrary and capricious, and (2) that Tyco's failure to inform Plaintiff of the conditions by which his vested SERP benefits could be forfeited prohibits the Special Appeals Committee from denying him those benefits.  (Am. Compl. ¶¶ 52, 60-63)  Both claims asserted in the Amended Complaint are brought under section 502(a)(1)(B) of ERISA.  *See* 29 U.S.C. § 1132(A)(1)(B). Suits for benefits under this section may only be maintained against certain parties.  "In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989); *see also Del Greco v. CVS Corp.*, 354 F. Supp. 2d 381, 384 (S.D.N.Y. 2005) (providing plan services insufficient to establish liability for ERISA claim).  The plan administrator is not personally liable for the unpaid benefits — payment of benefits is "uniquely the Plan's obligation." *Greater Blouse, Skirt & Undergarment Ass'n v. Morris*, No. 93 Civ. 1257, 1996 WL 325595, at *4 (S.D.N.Y. 1996); *accord Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1196 (8th Cir.

1998); *Colin v. Marconi Commerce Sys. Employee's Ret. Plan*, 335 F. Supp. 2d 590, 598

(M.D.N.C. 2004).  *But see Sheehan v. Met Life Ins. Co.*, No. 01 Civ. 9182, 2002 WL 1424592, at

*2 (S.D.N.Y. 2002) (holding that an insurance company that controls the distribution of funds

and decides whether to grant benefits under an employee benefit plan may be sued as a plan

administrator).  This rule springs from section 502(d)(2) of ERISA, which provides that "any

money judgment under this subchapter against an employee benefit plan shall be enforceable

only against the plan as an entity and shall not be enforceable against any other person unless

liability against such person is established in his individual capacity under this subchapter."  29

U.S.C. § 1132(d)(2).  Thus, for example, actions against one-time signatories to certain plan

agreements must fail, as these defendants have no power to provide plaintiffs with relief.  *See,*

*e.g.*, *Kerr v. Keogh*, 345 F. Supp. 2d 35, 40 (D. Mass. 2004) (former plan administrator released

as defendant).

      The Amended Complaint asserts claims against the Administrative Committee.  This

entity is never mentioned in the Plan Document for the SERP.  (*See* Aff. of Christopher Parlo in

Supp. of Defs.' Mot. to Dismiss Ex. B ("Parlo Aff."))  Instead, the Plan Document names the

"Company's Retirement Committee" as the entity with the power to exercise the Company's

rights under the Plan.  (Parlo Aff. Ex. B 3, 15)  The Administrative Committee is mentioned for

the first time in Amendment No. 2004-1 ("2004 Amendment") to the SERP (Parlo Aff. Ex. C),

which states, ". . . the Administrative Committee has had the sole responsibility for the general

administration of the Plan . . . ."[3]  (*Id.*)  However, the 2004 Amendment also provided that the

---

      [3]It is unclear whether the Administrative Committee and the Retirement Committee are
one and the same.  The Retirement Committee is not named as a defendant in the Amended
Complaint, but was named as a defendant in the original Complaint.

"Special Appeals Committee" was given the authority to handle the claims of senior officers accused of wrongdoing.  (*Id.*)

Any entity that is not the current plan administrator is incapable of providing Plaintiff with relief and, therefore, cannot be liable in a case such as this one.  *See Hall*, 140 F.3d at 1196 ("[Former plan administrator] is in no position, where it is no longer associated with the Plan, to pay out benefits to [plaintiff], even if those benefits should have been paid sooner. Only the Plan and the current plan administrator can pay out benefits to [plaintiff]."); *Colin*, 335 F. Supp. 2d at 598 (holding that relief must come from a party with current authority to provide it).  The powers of the Administrative Committee were explicitly delegated to the Special Appeals Committee for the purposes of Plaintiff's claims, and the 2004 Amendment does not appear to reserve any discretion on the part of the Administrative Committee.  (*See* Parlo Aff. Ex. C)  Such delegation of the Administrative Committee's fiduciary duties is permissible under ERISA where, as here, the authority of the named fiduciary to delegate its responsibilities is expressly provided for in the ERISA plan.  *See Rubio v. Chock Full O'Nuts Corp.*, 254 F. Supp. 2d 413, 422 (S.D.N.Y. 2003).  Thus, Plaintiff's claims against the Administrative Committee fail, as this Defendant has properly delegated away its power to provide Plaintiff with relief.  *Cf. Kerr*, 345 F. Supp. 2d at 40 (dismissing action against defendant who no longer had any role in ERISA plan administration).

Even if Plaintiff were to assert that the Administrative Committee retained supervisory power over the Special Appeals Committee's discretion, indirect control is insufficient to ground a finding of liability.  *See Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998) (holding indirect control of benefits is insufficient as a matter of law to establish ERISA liability).  In the

Second Circuit, "de facto" control is irrelevant where the employer has designated a plan administrator under 29 U.S.C. § 1002(16)(A).  *Id.*; *see also Lee v. Burkart*, 991 F.2d 1004, 1009 (2d Cir. 1993) (holding that insurer was not a Plan Administrator); *Chapman v. Choicecare Long Island Term Disability Plan*, 288 F.3d 506, 509-11 (2d Cir. 2002) (holding that Plan itself is always liable even where it has contracted administration of plan).  The Special Appeals Committee has been delegated the administrative duties for Plaintiff's claims, and, therefore, the Administrative Committee is dismissed as a Defendant.

### III.  Motions to Compel and Stay Arbitration

#### A.  Background

Defendant Tyco has filed counterclaims against against Plaintiff including (1) a declaratory judgment that the Retention Agreement is void ab initio for want of authority or, in the alternative, unenforceable due to Plaintiff's breach of contractual and fiduciary duties to Tyco; (2) damages for breach of contract (if the Retention Agreement is enforceable); and (3) damages for breach of fiduciary duty to Tyco.  (Defs.' Countercls. ¶¶ 13-25)[4]  Plaintiff has countered these counterclaims by moving to compel arbitration, arguing that the Retention Agreement requires arbitration of Defendants' counterclaims.  Specifically, Plaintiff cites the arbitration clause, which states, in pertinent part, that "[a]ny dispute or controversy under this

---

[4]Initially, counterclaims were asserted by Tyco and Tyco International, both of which were named Defendants in the original complaint.  In the Amended Complaint, Tyco International is no longer a named Defendant.  Therefore, Tyco International's cross-motion to stay arbitration of its counterclaims is dismissed as moot, and the Court is only considering the cross-motion of Defendant Tyco.  *Cf. LeBrew v. Reich*, No. 03-CV-1832, 2006 WL 1662595, at *7 (E.D.N.Y. May 12, 2006) (holding that amended complaint ended ability of formerly named defendants to file pleadings in matter as they were no longer defendants and prior complaint had no legal effect).

[Retention] Agreement shall be settled exclusively by arbitration in accordance with the rules of the American Arbitration Association then in effect."[5]  (Stevenson Aff. I Ex. E 11-12) Defendants cross-move to stay arbitration, arguing both that Plaintiff waived his right to arbitrate the claims, and that the claims themselves are not arbitrable.   As explained below, the Court finds that the counter-claims are arbitrable and orders that they be sent to arbitration.

        B.  Standards for Motions to Compel/Stay Arbitration

        There is a strong federal policy favoring arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Co.*, 460 U.S. 1, 24 (1983); *see also Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104-105 (2d Cir. 2002) (per curiam) ("[T]here is a strong presumption in favor of arbitration." (internal quotations omitted)).  "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  Not surprisingly, the law also favors the enforcement of arbitration agreements.  *See Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985).

        The Supreme Court has held that district courts are required by the Federal Arbitration Act ("FAA") to "compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel."  *Dean Witter Reynolds, Inc. v. Byrd*,  470 U.S. 213, 217 (1985).  This is true even in a case such as this one, where sending arbitrable claims to arbitration would create separate proceedings in different forums.  *See id.*; *see also Brown v. Miguens*, No. 02 Civ. 5278,

---

        [5]The clause also provides that "[Tyco] shall bear all costs and expenses arising in connection with any arbitration proceeding pursuant to this Section . . . ."  (Aff. of R. Scott Stevenson in Opp. to Defs.' Mot. to Dismiss Ex. E 11-12 ("Stevenson Aff. I"))

2003 WL 1090304, at *5 (S.D.N.Y. Mar. 11, 2003) (compelling arbitration of arbitrable claims even though it would create dual proceedings).  Indeed, courts have no discretion to hear the arbitrable claims, even when they are based on the same facts as the non-arbitrable claims.  *See Nilsen v. Prudential-Bache Sec.*, 761 F. Supp. 279, 284 (S.D.N.Y. 1991) ("When some claims before the court are arbitrable and others are not, a court has no discretion to hear the arbitrable claims, notwithstanding that those claims are based on facts common to the non-arbitrable claims.").

Further, the courts are to broadly construe arbitration clauses.  *See Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir. 1998) (noting that federal policy requires courts to construe arbitration clauses as "broadly as possible"); *see also Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 847 (2d Cir. 1987) (noting arbitration clauses must be construed broadly); *Earthtrade, Inc. v. Gen. Brands Int'l Corp.*, No. 95 Civ. 8913, 1996 WL 63067, at *5 (S.D.N.Y Feb. 14, 1996) (same).  Claims which "touch matters" covered by an agreement with an arbitration clause must be arbitrated.  *Oldroyd*, 134 F.3d at 77; *see also JLM Indus. v. Stolt-Nielsen, S.A.*, 387 F.3d 163, 172-74 (2d Cir. 2004) (defending "touch matters" standard and holding that broadly construed arbitration clause included collateral matters).  In fact, there must be "'clear and unambiguous' or 'unmistakably clear'" language to exclude an issue from an arbitration agreement.  *Genesco*, 815 F.2d at 847.  This also includes questions such as waiver and similar defenses to arbitration, which are to be settled *within* arbitration.  *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334, 364 (S.D.N.Y. 2005) (citing *Moses H. Cone Mem'l Hosp.*).  In the end, as the Second Circuit has emphasized, "[a]rbitration should be ordered 'unless it may be said with positive

11

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Genesco*, 815 F.2d at 847 (quoting *S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc.,* 745 F.2d 190, 194 (2d Cir. 1984)).

      C.  Merits of Defendants' Counterclaims

          1.  The First Counterclaim

      Defendants' First Counterclaim alleges that the Retention Agreement itself is either void or voidable.  A court may not compel arbitration under the FAA if the agreement containing the arbitration clause is void or incapable of being performed.  *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 30 (2d Cir. 2001).  A void contract produces no legal obligation.  Void contracts are rare, but contracts may be declared void where, for instance, parties fail to agree to essential terms and thus never reach a valid agreement.  *See id.* at 31; *see also* Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 1:20, at 49 (4th ed.1990).  If a party presents evidence showing that the contracts containing the relevant arbitration provisions were invalid and thus void, a court must set the issue for trial.  *See Sphere Drake Ins. Ltd.*, 263 F.3d at 31; *see also Adams v. Suozzi*, 433 F.3d 220, 226 (2d Cir. 2005) ("If the contract embodying a purported arbitration agreement never existed, the arbitration agreement itself does not exist.").

      In contrast, a voidable agreement imposes the obligations of a valid contract on the parties unless and until it is rescinded.  *See Adams*, 433 F.3d at 227; *Sphere Drake Ins. Ltd.*, 263 F.3d at 3l.  For example, a contract that is allegedly induced by fraud is voidable but enforceable unless the alleged fraud is proven.  *See Sphere Drake Ins. Ltd.*, 263 F.3d at 31.  In addition, in a contract that is alleged to be voidable, not void, any arbitration clauses are severable from rest of

the contract.  *See id*.  This means that courts must consider the arbitration clause separately from the rest of the contract and that, unless a party specifically alleges that the arbitration clause is voidable, the court should construe the arbitration clause at issue broadly to encompass claims that the contract was induced by fraud.  *See id.* (citing *Prima Paint Co. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1968)).  Thus, to receive a trial on the validity of the arbitration clause included in an allegedly voidable contract, those seeking to avoid arbitration must specifically allege and provide supporting evidence showing that the arbitration clause at issue is voidable.  *See id.* at 32 ; *see also Adams*, 433 F.3d at 227 ("[I]f a contract is 'voidable,' the party must show that the arbitration clause itself is unenforceable.").

　　　Tyco's counterclaim argues that the Retention Agreement itself is either void or voidable (Defs.' Countercls. ¶ 17) for "want of authority" (Defs.' Countercls. ¶ 15), or because of Plaintiff's "breach of his contractual and fiduciary obligations to the Company."  (Defs.' Countercls. ¶ 16)   Tyco's allegation that the Retention Agreement is voidable is insufficient to require a trial on the validity of the Agreement, as neither of these allegations is specific to the arbitration clause.  *See Sphere Drake Ins. Ltd.*, 263 F.3d at 31-32 ("[A] party is not entitled to a trial on the arbitrability of a voidable contract unless the party alleges that the arbitration clause itself is voidable and provides some evidence in support of its allegation."); *Adams*, 433 F.3d at 227 ("Only if a contract is 'void,' and not 'voidable,' can a party challenge the enforceability of an arbitration clause without alleging a particular defect with that clause.").  However, the Court must still consider whether the Agreement itself is void.

　　　Tyco alleges that Mr. Kozlowski, the former Tyco CEO, exceeded the authority given to him by Tyco's Board of Directors when he signed Plaintiff's Retention Agreement, and that

13

Plaintiff knew he had done so.  (Defs.' Countercls. ¶ 9)  Where an agent responsible for negotiating a contract on behalf of its principal acts outside the scope of its agency, and the other party to the contract is aware that the agent is acting outside the scope of its agency, any resulting contract is void for want of both actual and apparent authority and the principal will not be bound by the resulting contract.  *See Sphere Drake Ins. Ltd.*, 263 F.3d at 32 (citing *Scientific Holding Co. v. Plessey Inc.*, 510 F.2d 15, 24 (2d Cir.1974) (Friendly, J.)); *see also* Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 35:20, at 257-58 (4th ed.1990) ("The principal is not bound where the agent exceeds the scope of his apparent authority and his want of authority is known to the person dealing with him.").  If Defendants had presented evidence to support their allegation that Mr. Kozlowski was acting outside his authority and that Mr. Stevenson had actual knowledge that Mr. Kozlowski did not have authority to sign the Retention Agreement, the Retention Agreement might be void and a trial on that issue would be merited prior to arbitration.  *See Sphere Drake Ins. Ltd.*, 263 F.3d at 31-32.  However, Defendants presented no such evidence.  The allegations of Plaintiff's knowledge regarding Mr. Kozlowski's authority in Defendants' counterclaims are based on information and belief.  (Defs.' Countercls. ¶ 9)  They did not submit any briefing to the Court on this issue, nor did they present any evidence of Plaintiff's knowledge.  Therefore, their general allegations that the Retention Agreement was either void or voidable are insufficient to require a trial and therefore the Court may compel arbitration.  *Sphere Drake Ins. Ltd.*, 263 F.3d at 32 ("[I]t is not enough for [plaintiff] to make allegations [that the contract was void]-[plaintiff] must also produce some evidence substantiating its claim.").

14

2.  The Second and Third Counterclaims

The Second Counterclaim alleges that Plaintiff breached the Retention Agreement (Defs.' Countercls. ¶¶ 18-21).  An allegation of breach is clearly a "dispute or controversy under" the Retention Agreement as contemplated in the Retention Agreement's arbitration clause.  Thus, this counterclaim clearly should be submitted to arbitration and not adjudicated by this Court. *See Genesco*, 815 F.2d at 847.

However, the question of whether Defendants' Third Counterclaim, alleging that Plaintiff breached his fiduciary duties to Tyco, should be submitted to arbitration is not as clear.  The fiduciary relationship between Plaintiff and Tyco was created by the common law of agency, not by the Retention Agreement.  *See Fields v. Thompson Printing Co.*, 363 F.3d 259, 270 (3d Cir. 2004) ("[E]very employee owes a duty of loyalty to their employer.").  Standing alone, such a claim might not be automatically subject to arbitration, as it does not directly arise from the Retention Agreement.  However, this counterclaim clearly "touch[es] matters" related to the arbitration clause of the Retention Agreement.  *Oldroyd*, 134 F.3d at 77.

The inquiry into whether a claim touches an arbitrable claim is a factual one–arbitrability is based on the specific facts at issue, not the bases of the legal claims asserted.  *See JLM Indus.*, 387 F.3d at 172 ("'[I]f the allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them.'" (quoting *Oldroyd*, 134 F.3d at 77)).  When an agreement contains a broad arbitration clause, disputes arising out of the same fact situations as arbitrable disputes should generally be sent to arbitration.  *Id.* at 183 ("[W]e see no reason why state law claims resting on the same facts, and subject to the same broad arbitration clause, should not be subject to arbitration.")  Here, the

15

Retention Agreement's arbitration clause was extremely broad, stating "[a]ny dispute or controversy under this Agreement shall be settled exclusively by arbitration."  (Stevenson Aff. I Ex. E 11-12)

In this case, the factual bases of the arbitrable counterclaims and the potentially non-arbitrable claim are identical.  The Second Counterclaim is a breach of contract claim based on an alleged breach of the Retention Agreement by Plaintiff's refusal to provide certain information to his employer.  The Third Counterclaim alleges that Plaintiff's same refusal also breached his duties of care and loyalty to Defendants.  Although Defendants assert two different legal bases for recovery, Plaintiff's alleged breaching conduct that gives rise to both the Second and the Third Counterclaim is identical–a refusal to respond to his employer's attorney's request for information.  Thus, as it is factually identical to a claim that is covered by the arbitration clause, the Third Counterclaim clearly "touch[es] matters" related to the arbitration clause and must be submitted to arbitration.  *See JLM Indus.*, 387 F.3d at 183; *see also Oldroyd*, 134 F.3d at 77 ("'In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted.'" (quoting *Genesco*, 815 F.2d at 846)).

### D.  Staying Arbitration Under the All Writs Act

Defendants also argue that this Court may stay the arbitration proceedings under the All Writs Act.  *See* 28 U.S.C. § 1651(a).[6]  The All Writs Act authorizes the federal courts to issue commands necessary to "effectuate and prevent the frustration of orders it has previously issued

_____

[6]The All Writs Act states: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).

in its exercise of jurisdiction otherwise obtained." *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40 (1985) (internal quotations and citations omitted); *see also United States v. Int'l Bhd. of Teamsters*, 266 F.3d 45, 49-50 (2d Cir. 2001).  However, there are limits to a court's authority under the All Writs Act.  For example, courts cannot use the All Writs Act to justify the use of injunctions or commands where a statute specifically addresses the particular issue in dispute.  *See Penn Bureau of Corr.*, 474 U.S. at 43.  The All Writs Act also cannot confer jurisdiction on the courts where they do not already possess it.  *See Syngenta Crop. Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002).

It is clear from the cases above that a court may use the All Writs Act to prevent arbitrators from deciding issues within the court's jurisdiction.  However, the FAA divests the courts of jurisdiction where the parties properly request arbitration.  *See United States v. Eberhard,* No. 03 Cr. 562, 2004 WL 616122, at *3 (S.D.N.Y. Mar. 30, 2004) ("It does not follow from this proposition that a district court's power to stay a proceeding . . . extends to arbitration proceedings administered outside the auspices of the federal courts."); *Nilsen*, 761 F. Supp. at 284 ("When some claims before the court are arbitrable and others are not, a court has no discretion to hear the arbitrable claims . . . .").

None of the cases cited by Defendants support granting a stay of arbitration in this case under the All Writs Act.  For example, Defendants argue that because *Eberhard* discussed the possibility that a federal court could stay or enjoin arbitration proceedings under section 4 of the FAA, *see Eberhard,* 2004 WL 616122, at *3, and then later discussed the All Writs Act in a footnote, *id.* at *3 n.6, it supports their proposition that this Court may stay arbitration here. However, the *Eberhard* court denied the motion to stay arbitration, holding that it had no power

17

to stay arbitration proceedings in that case.  *Id.* at *3.  Further, the reference to the All Writs Act did not alter the court's view that it had no authority to use injunctions to stop arbitrations outside "the auspices of the federal courts."  *Id.*  Additionally, in *In re Am. Honda Motor Co.*, 315 F.3d 417 (4th Cir. 2002), also cited by Defendants, the court granted an injunction against enforcement of an arbitration award only because the arbitrator had attempted to decide an issue which was under the exclusive jurisdiction of the court.  *Id.* at 437-38.  The court did not, however, enjoin the arbitration itself.  *Id.*

Finally, in the last case cited by Defendants, *Motorola Credit Corp. v. Uzan*, No. 02 Civ. 666, 2002 WL 31319932 (S.D.N.Y. 2002), Judge Rakoff decided *not* to reach the issue of whether the court had the power to stay the arbitrations under the All Writs Act.[7]  *Id.* at *4.  However, even if he had, the arbitrations at issue in *Uzan* were initiated in an attempt to circumvent proceedings in federal court, *id.*, and staying the arbitration would have been consistent with *In re Am. Honda Motor Co.*, as both involved instances where the arbitration infringed on proceedings in federal court.  Since federal courts do not have jurisdiction over arbitrable claims where the parties have requested arbitration, the All Writs Act is inapplicable here.

Defendants also argue that section 4 of the FAA allows courts to enjoin arbitration proceedings not mandated by a contract.  There is some authority for this proposition.  *See L.F. Rothschild & Co. v. Katz*, 702 F. Supp. 464, 467 (S.D.N.Y. 1988); *see also Eberhard*, 2004 WL 616122, at *3 (acknowledging that other courts have held section 4 of the FAA applicable to stay

---

[7]Judge Rakoff instead entered an injunction under Fed. R. Civ. P. 65.  *Motorola Credit Corp.*, 2002 WL 31319932, at *4.

or enjoin arbitration proceedings).  As the *Eberhard* court notes, however, this is generally the case only where the contract is silent on the issue of arbitration.  2004 WL 616122, at *3.  Here, it could not be more clear that the Retention Agreement calls for arbitration, as it states "[a]ny dispute or controversy under this Agreement shall be settled exclusively by arbitration." (Stevenson Aff. I Ex. E 11-12)   Thus, there is no reason this Court must enjoin the arbitration under section 4 of the FAA.

     E.  Independence of SERP from Retention Agreement

     Defendants further argue that Plaintiff's demand for arbitration raises the same issues that his Amended Complaint raises before this Court and, therefore, this Court should resolve the claims rather than send them to arbitration.  Defendants contend that, in order to recover under the SERP, Plaintiff must affirmatively demonstrate that the Special Appeals Committee's decision to deny his SERP benefits was reached in bad faith.  Therefore, Defendants conclude, because the Special Appeals Committee made its determination regarding Plaintiff's SERP based on Plaintiff's alleged breach of his fiduciary duty, the counterclaims are "integral parts of [Plaintiff's] claim in this lawsuit."  (Defs.' Opp'n Mem. 16)  Plaintiff, however, counters that, because his original claims arise under the SERP and Defendants' counterclaims arise under the Retention Agreement, the counterclaims are distinct and must be sent to arbitration per the Retention Agreement.   Defendants also assert that Plaintiff seeks payment of SERP benefits under his request for Arbitration since he asks for a determination that he is due "all compensation." (Stevenson Aff. II Ex. G ¶ 48)  Plaintiff counters by arguing that if he "succeeds in the Arbitration, his relief would not include the SERP benefit sought here."  (Pl.'s Reply Mem. in Further Supp. of Pl.'s Mot. to Compel Arb. 10 ("Pl.'s Reply Mem."))

As noted above, the Supreme Court has held that the "Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd*,  470 U.S. at 217; *see also Morgan, Olmstead, Kennedy & Gardner Inc. v. U.S. Trust Co. of N.Y.*, 608 F. Supp. 1561, 1567-69 (S.D.N.Y. 1985) (noting that interest in enforcing contractual arbitration clauses generally outweighs interest in avoiding piecemeal litigation).  Thus, the mere fact that similar issues may be involved in both the arbitration and the litigation in this Court should not prevent the Court from sending arbitrable claims to arbitration.  *See Rush*, 779 F.2d at 891 (holding that interest in enforcing arbitration clauses outweighs court interest in judicial economy); *see also In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 204 (Bankr. S.D.N.Y. 2002) ("[T]he strong federal policy favoring arbitration trumps the usual considerations of judicial economy and efficiency . . . Thus, arbitration may be required even though it will require several litigations and possibly lead to inconsistent results.").

In any event, the allegations in the Amended Complaint and the counterclaims are distinct.  Defendants, of course, argue otherwise, claiming that resolution of their Third Counterclaim, alleging breach of fiduciary duty by Plaintiff, is crucial to Plaintiff's claims because it is an affirmative defense to his SERP claim.  There are two problems with this argument.  First, Defendants ignore the fact that their first two counterclaims, that the Retention Agreement is void and that Plaintiff breached the Retention Agreement, are wholly independent from Plaintiff's claims in the Amended Complaint.  Defendants do not allege, and the Court finds no evidence to support the conclusion, that resolution of either of the first two

counterclaims would have any effect on Plaintiff's claims under the SERP. Thus, regardless of Defendants' arguments about the Third Counterclaim, there is no overlap between Plaintiff's complaints and the first two counterclaims.

Second, the mere overlap of the Third Counterclaim and the Amended Complaint is insufficient to prevent the Court from compelling arbitration. When the factual allegations underlying a cause of action merely "touch" matters within the scope of an arbitration agreement, those claims should be submitted to arbitration regardless of the legal causes of action which form the bases of the claims. *See Oldroyd*, 134 F.3d at 77; *Genesco*, 815 F.2d at 846. As discussed above, the Third Counterclaim clearly touches matters within the scope of the arbitration agreement. Defendants' Third Counterclaim rises directly out of Plaintiff's status as an employee, a status that was a direct result of the Retention Agreement. The facts involved in Defendants' Second and Third Counterclaims are the same: whether Plaintiff refused to cooperate with Tyco's counsel. Thus, the Third Counterclaim "touches" arbitrable matters. Finally, the Court may well benefit from the initial hearing of this matter by the arbitrator. Should the arbitrator come to the conclusion that Plaintiff acted in breach of a fiduciary duty, the Court may give preclusive effect to that finding. *See Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

## F.   Waiver of Right to Arbitrate

Finally, Defendants argue that by (1) threatening to disclose Tyco's trade secrets, (2) "inject[ing]" the Retention Agreement into a Florida State court action where he was a defendant, and (3) asserting his rights to attorney's fees under the Retention Agreement before that court, Plaintiff expressly waived his right to demand that the counterclaims be sent to arbitration.

21

As noted above, waiver of the right to arbitrate is "not to be lightly inferred." *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993) (internal quotations omitted).  Doubts regarding whether arbitration has been waived should be resolved in favor of compelling arbitration.  *See Allied Sanitation, Inc. v. Waste Mgmt. Holdings, Inc.*, 97 F. Supp. 2d 320, 328 (E.D.N.Y. 2000).  A waiver of the right to arbitrate may be explicit, *see Gilmore v. Shearson/American Express, Inc.*, 811 F.2d 108, 112-13 (2d Cir. 1987) *overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988), or it may be implicit, based on the conduct of the party alleged to have waived the right.  *See Rush*, 779 F.2d at 887-90 (refusing to find implied waiver from delay, filing of a motion to dismiss, participation in discovery, and filing of an answer); *see also Century Indem. Co. v. Viacom Int'l Inc.*, No. 02 Civ. 2779, 2003 WL 402792, at *7 (S.D.N.Y. Feb. 20, 2003) (refusing to find implied waiver where defendant failed to show proof of prejudice).  Express waivers have been found in cases where a plaintiff withdrew a previous motion to compel arbitration, only to file a new motion later in the same action.  *See, e.g.*, *Gilmore*, 811 F.2d at 112-13.  Express waivers have also been found where the party seeking arbitration previously opposed a motion to compel arbitration.  *See, e.g.*, *Smith v. Petrou*, 705 F. Supp. 183, 186 (S.D.N.Y. 1989).

Defendants argue that Plaintiff expressly waived his right to arbitration by asking a Florida court to enforce the Retention Agreement against Tyco prior to his demand for arbitration.  (Defs.' Opp'n Mem. 17-18)  It is true that merely asserting the right to arbitrate in the State court action is not enough, on its own, to avoid finding an express waiver.  *See Cotton*, 4 F.3d at 176 ("To avoid waiver . . . it is not enough merely to assert a right without taking appropriate steps to secure it.")  In this case, however, Plaintiff has clearly taken the appropriate

steps.  Defendants elide the fact that Plaintiff, in both the Florida action and the matter before

this Court, demanded that claims arising from the Retention Agreement be arbitrated.  (Sarleson

Decl. Ex. 2 at 2)  Further, it was not Plaintiff who initiated the state court action, but it was

Plaintiff who sought to dismiss Defendants' state court action because the issues involved were

covered by the Retention Agreement's arbitration clause.  (*Id.*)  In addition, although Plaintiff

moved to have the Florida court decide his entitlement to attorney's fees under the Retention

Agreement, that court did not come to a final determination on the issue, deferring to the

judgment of this Court.  (Sarelson Decl. Ex. 5)

Thus, this case is easily distinguishable from the case relied on by Defendants.  In one

case, *Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P.*, 49 F. Supp. 2d 331 (S.D.N.Y.

1999), the party seeking arbitration had already failed to prevail at a preliminary injunction

hearing and, by seeking arbitration, was essentially seeking to have the same issues re-decided.

*Id.* at 339.  Here, Plaintiff did not initiate litigation over the arbitrable issues, in this or any court,

and then attempt to switch to arbitration.  Instead, Plaintiff is seeking arbitration of the

counterclaims which were introduced into this case by Defendants.  *Cf. id.* at 341 (denying

motion to compel arbitration where plaintiff had plainly rejected arbitration option in favor of

litigation).  The distinction between a plaintiff who seeks to first litigate then arbitrate the same

claim, and one who seeks to litigate only non-arbitrable claims is often recognized by courts.  For

instance, one court noted that a party which takes "inconsistent positions in a lawsuit and simply

ignor[es] the effect of a prior filed document" has waived arbitration.  *In re Salomon Inc.*

*S'holders Derivative Litig.*, No. 91 Civ. 5500, 1994 WL 533595, at *12 (S.D.N.Y. Sept. 30,

1994).  In *Gilmore* and *Petrou*, the only other cases relied upon by Defendants, the plaintiff first

opposed arbitration and then sought to compel it later in the same proceeding. *Gilmore*, 811 F.2d at 112-13; *Petrou*, 705 F. Supp. at 186. Nothing like those circumstances is involved here. As noted above, Plaintiff has consistently sought to have arbitrable claims under the Retention Agreement arbitrated.

Finally, even if Plaintiff had expressly waived any right to compel arbitration under the Retention Agreement, it would only be for the issue raised in the state court proceeding, namely attorney's fees, and not the counterclaims generally. Waiver of one arbitrable claim through litigation does not result in waiver of other potentially arbitrable claims. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997); *accord Gingiss Int'l, Inc. v. Bormet*, 58 F.2d 328, 330-32 (7th Cir. 1995); *Commercial Union Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386, 389-90 (1st Cir. 1993); *see also Gidatex, S.R.L. v. Campaniello Imps. Ltd.*, 13 F. Supp. 2d 420, 428 (S.D.N.Y. 1998). For example, in *Gidatex*, the arbitration clause in the respective agreement applied to all of the defendant's counterclaims. However, despite finding that the plaintiff had waived its right to compel arbitration on some of the claims by litigating those claims before the district court, the court still found that the plaintiff did not waive its right to arbitrate certain other counterclaims. *See Gidatex, S.R.L.*, 13 F. Supp. 2d at 428. Thus, even if Plaintiff did waive his right to arbitration regarding attorney's fees, he did not waive his right to arbitration regarding the Defendants' counterclaims, as he has never raised them before any court. *Id.* at 427 ("Courts must be reluctant to find waiver where the arbitrable claims at issue are unrelated to the claims asserted in court.").

There is also no basis in this case for finding Plaintiff implicitly waived his right to arbitration. When it is ambiguous whether the party seeking arbitration has expressly waived the

right to arbitrate, the Court must also determine whether waiver has been implied.  *See Smith*,

705 F. Supp. at 185.  The inquiry is fact-specific and lacks bright line rules, but courts are to

consider the following factors:  "(1) the time elapsed from the commencement of litigation to the

request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any

substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of

pre-trial discovery not available in arbitration, delay, and expense."  *S & R Co. of Kingston v.*

*Latona Trucking, Inc.,* 159 F.3d 80, 83 (2d Cir. 1998).   "The key to waiver analysis is

prejudice."  *Thyssen*, 310 F.3d at 105; *see also In re Salomon Inc. S'holders Derivative Litig.*,

1994 WL 533595, at *10 ("Waiver will not be inferred where there is no prejudice to the party

seeking to avoid arbitration.").

After considering the three different factors described in *S & R Co. of Kingston*,

Plaintiff's claims do not fall into the category of  "protracted litigation" that would constitute an

implied waiver of the right to arbitrate under the arbitration clause in Retention Agreement.  *S &*

*R Co. of Kingston,* 159 F.3d at 84.  First, Plaintiff's Motion to Compel Arbitration of the

counterclaims was timely filed.  Defendants' counterclaims were filed on June 24, 2005.

Plaintiff answered on July 18, 2005, less than one month later, and requested a conference to file

a motion to compel arbitration about a month thereafter.  Plaintiff's Motion to Compel was filed

September 29, 2005.  Given this chronology of events, the Court finds that Plaintiff has not been

dilatory and therefore has not waived his arbitration claim because of delay.  *See Rush*, 779 F.2d

at 887 (holding eight-month delay to be insufficient to constitute waiver of right to arbitrate); *see*

*also Danny's Constr. Co. v. Birdair, Inc.*, 136 F. Supp. 2d 134, 143 (W.D.N.Y. 2000) (holding

that mere passage of time without showing of protracted litigation during that period cannot be

relied upon as a waiver of arbitration).[8]

Second, the amount of litigation engaged in by the parties thus far has not been extensive. Since this action commenced, Defendants filed a motion to dismiss and counterclaims, but these were mostly made moot by Plaintiff's Amended Complaint.  In any event, litigation involving non-arbitrable claims does not constitute a waiver, *see Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463 (2d Cir. 1985), and, as noted above, Plaintiff's claims in the Complaint are not based on the Retention Agreement and therefore are not covered by its mandatory arbitration clause.  Additionally, because the Florida litigation over attorney's fees was limited and put on hold and the parties have engaged in no litigation regarding the arbitrable claims beyond this Motion to Compel or Stay Arbitration, there has been no protracted litigation that would justify finding an implied waiver of Plaintiff's right to arbitration.

Third, Defendants have demonstrated no prejudice from Plaintiff's choice to arbitrate the claims based on the Retention Agreement.  Prejudice that would support a finding of waiver "can be substantive prejudice to the legal position of the party opposing the arbitration, such as when the party seeking arbitration . . . attempts to relitigate [an] issue . . . or obtains information through discovery procedures not available in arbitration.  [It] may also be . . . the unnecessary delay or expense resulting from an opponent's delay in invoking its right to arbitration." *Gidatex, S.R.L.*, 13 F. Supp. 2d at 427.  Defendants assert prejudice only from their claim that Plaintiff is seeking the proverbial "second bite at the apple," allegedly regarding the validity of

---

[8]It also bears noting that there was only a five-month delay between Plaintiff's motion for attorney's fees in the Florida action and his filing of the instant motion to compel arbitration on Defendants' counterclaims.  This delay is neither substantial nor prejudicial.

the Retention Agreement in the Florida action.  However, Plaintiff initially sought arbitration in

Florida and only sought attorney's fees under the Retention Agreement after Tyco withdrew its

complaint.  That motion was itself stayed by the Florida court.  Further, because Plaintiff's

motion in Florida involved issues unrelated to Defendants' counterclaims, the claim of prejudice

is unpersuasive.  Moreover, Plaintiff has not requested discovery nor initiated any motions

related to substantive issues dealing with Defendants' counterclaims in this or any other court.

*See S & R Co. of Kingston,* 159 F.3d at 83; *see also Graphic Scanning Corp. v. Yampol*, 688 F.

Supp. 857, 860 (S.D.N.Y. 1988) (finding no prejudice where there was no significant litigation

other than complaint and answer and discovery had not commenced).   Though Plaintiff has

answered Defendants' counterclaims, an answer, even in conjunction with a delay in requesting

arbitration, does not prejudice Defendants.  *See Graphic Scanning Corp.*, 688 F. Supp. at 860;

*see also Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 434 F. Supp. 2d 211, 217

(S.D.N.Y. 2006) (holding that motion to dismiss original complaint did not waive defendant's

right to arbitration).  Thus, the absence of prejudice alone fatally undercuts any claim of waiver.

*See In re Salomon Inc. S'holders Derivative Litig.*, 1994 WL 533595, at *11; *see also Century

Indem. Co.*, 2003 WL 402792, at *7 (refusing to find implied waiver where defendant failed to

show prejudice).

## IV. Conclusion

For the reasons stated herein, the Administrative Committee's Motion to Dismiss is GRANTED. Plaintiff's Motion to Compel Arbitration is also GRANTED, and the corresponding Motion to Stay Arbitration is accordingly DENIED. Therefore, all litigation related to Defendants' counterclaims will be stayed pending the outcome of the arbitration.


SO ORDERED.

Dated:      September 29, 2006
            New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

28

Service List

Marc S. Dreier, Esq.
Meredith Alexis Pennoti, Esq.
Dreier LLP
499 Park Avenue
New York, NY 10022
Fax: (212) 328-6101

Christopher Alan Parlo, Esq.
Christopher Paul Reynolds, Esq.
Adam Joshua Price, Esq.
Morgan, Lewis & Bockius LLP
101 Park Avenue
37th Floor
New York, NY 10178
Fax: 212-309-6273

Eric G. Hoffman, Esq.
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
Fax: (212) 839-5599