**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                                     :

R. SCOTT STEVENSON,                    :
                                                      :

            Plaintiff,               :
                                                      :

      -v-                            :      No. 04 CV 4037 (KMK)
                                                        :

TYCO INTERNATIONAL (US) INC.    :      ***Electronically Filed***
SUPPLEMENTAL EXECUTIVE RETIREMENT  :
PLAN, TYCO INTERNATIONAL (US) INC., and  :
TYCO INTERNATIONAL (US) INC. SPECIAL  :
APPEALS COMMITTEE,             :
                                                        :

           Defendants.            :
                                                        :
--------------------------------------------------------------------x

**MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION TO COMPEL ARBITRATION**

**I.    PRELIMINARY STATEMENT**

       This Court has and must retain jurisdiction over Tyco's counterclaims to the extent those

counterclaims are based upon Plaintiff's admitted criminal conduct occurring <u>before</u> the

Retention Agreement, dated March 4, 2002.  Because the Retention Agreement's arbitration

clause is "narrow," not "broad," as defined by Second Circuit case law, the Court's denial of

Plaintiff's cross-motion to compel violates neither the Retention Agreement nor the FAA.[1]

       In his papers, Plaintiff maintains that <u>all</u> of Defendant's several counterclaims are

properly compelled to arbitration, since they all "touch matters" within the purview of the

parties' March 2002 Retention Agreement.  Pl's Brief, at 2.  According to Plaintiff, even

Defendant's counterclaim for breach of fiduciary duty, based in part upon admitted criminal

---

[1]    Tyco contemporaneously served with its Motion for Reconsideration a letter requesting permission to file in
the alternative a motion for summary judgment.  In view of the parties' pre-motion conference with the Court
on December 5, 2006, Tyco withdraws its Motion for Reconsideration, except to the extent that Tyco requests
in this Opposition that certain of (or certain parts of) Tyco's counterclaims be adjudicated by this Court.

misconduct by Plaintiff that pre-dates the parties' Retention Agreement, is subject to mandatory arbitration.  Pl's Brief, at 2.

Plaintiff's analysis is fundamentally flawed, however, because it rests upon the erroneous conclusion that the arbitration clause contained in the Retention Agreement is a "broad" arbitration clause and, therefore, readily subsumes all claims or disputes that "touch matters" covered in the Agreement, including disputes that are, at best, collateral to the Agreement. However, controlling case law and precedent in this circuit hold that an arbitration clause like the clause at issue here – namely, one that addresses itself to disputes "under" or "arising under" the relevant agreement – is in fact a "*narrow*" arbitration clause.  See, e.g., S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 194 (2d Cir. 1984) (holding that to ensure that an arbitration clause is narrowly interpreted parties must use the phrase "arising under" or its equivalent).

Because the clause at issue in the instant case is "narrow," not "broad," the general test for arbitrability of related disputes is "whether the dispute is over an issue that 'is on its face within the purview of the clause.'"  Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001) (quoting Rochdale Vill., Inc. v. Pub. Serv. Employees Union, 605 F.2d 1290, 1295 (2d. Cir. 1979)).  This test is far more exacting than the "touches matters" standard and other standards generally applied by courts in cases involving "broad" arbitration clauses.  Applying the more exacting test to the present case, it is clear that Defendant's claims are not subject to the Retention Agreement's arbitration clause to the extent that such claims are based on Plaintiff's 1998-2000 criminal misconduct or his other breaches of fiduciary duty that occurred prior to the execution of the Retention Agreement.  A claim that is

based on conduct that <u>pre-dates</u> an agreement cannot be within the purview of a provision that expressly limits arbitration to disputes <u>under</u> the agreement.

Accordingly, Tyco respectfully requests that the Court retain jurisdiction over its counterclaims to the extent they are based on Plaintiff's pre-Agreement misconduct and deny Plaintiff's cross-motion to compel arbitration.  Specifically, Tyco's counterclaims for breach of fiduciary duty (First Counterclaim), unjust enrichment (Second Counterclaim), and conversion (Third Counterclaim) each are based, in part, on conduct by Plaintiff that occurred on or before March 3, 2002.

## II.   LEGAL ARGUMENT

### A.   The Arbitration Clause In The Retention Agreement Is "Narrow" And Therefore Counterclaims Based On Misconduct That Pre-Dates The Retention Agreement May Not Be Compelled To Arbitration.

Defendant's initial counterclaims, filed prior to Plaintiff's guilty plea and the filing of the related criminal Information, stated claims based exclusively on conduct that occurred *after* the execution of the Retention Agreement.  In contrast, Defendant's counterclaims, as amended, refer to claims that accrued and conduct that occurred *before* the execution of the Retention Agreement, as Plaintiff's guilty plea allocution makes patently clear.  The arbitration clause contained in the Retention Agreement states, in pertinent part, that "[a]ny dispute or controversy <u>under</u> this Agreement shall be settled exclusively by arbitration." Retention Agreement, at ¶17. (emphasis added).  In his papers, Plaintiff describes the Retention Agreement's arbitration clause as "broad" and, therefore, argues that all of Defendant's amended counterclaims, including counterclaims that are based on Plaintiff's pre-Agreement misconduct, are properly compelled to arbitration.  <u>See</u> Pl's Brief, at 4-5.

Plaintiff misreads the controlling case law in this circuit.  The Court of Appeals for the Second Circuit has held that, as a matter of law, arbitration clauses that expressly confine their

application to disputes "*under*" or "*arising under*" the relevant agreement are properly classified as "*narrow*" arbitration clauses.  See In re Kinoshita & Co., 287 F.2d 951, 953 (2d Cir. 1961) ("The agreement to arbitrate is limited…when it refers to disputes or controversies 'under'…the contract"); Mineracao, 745 F.2d at 194 ("We…confine Kinoshita to its precise facts…. The provision involved in Kinoshita required arbitration of 'any dispute or difference aris[ing] under' the agreement.  Thus, to ensure that an arbitration clause is narrowly interpreted contracting parties must use the foregoing phrase or its equivalent") (emphasis added); Louis Dreyfus, 252 F.3d at 225-227 (noting that the phrase "arising from" in an arbitration clause suggests a broad scope, as opposed to the phrase "arising under," which "limits arbitration to a literal interpretation or performance of the contract") (emphasis added); cf. Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995) (noting that the paradigmatic "broad" arbitration clause submits to arbitration any claim or controversy "arising out of or relating to" the relevant agreement) (emphasis added).  In short, the narrowness or breadth of an arbitration clause is not a subjective matter but a well-defined legal concept.

The arbitration clause at issue here, like the "narrow" arbitration clauses referenced in the above cases, expressly limits the class of arbitrable disputes to those "under" the relevant agreement.  Indeed, the parties here drafted the arbitration clause with precisely the language sanctioned as "narrow" by the Second Circuit in Kinoshita, Mineracao, and Louis Dreyfus.  The clause is, therefore, properly classified as "narrow" under controlling Second Circuit precedent.

Accordingly, because the Retention Agreement's arbitration clause is "narrow," and not "broad," there is no presumption of arbitrability of related disputes.  Where an arbitration clause is "narrow," the general test for the arbitrability of disputes is "whether the dispute is over an issue that is on its face within the purview of the clause."  Louis Dreyfus, 252 F.3d at 224

(citations omitted).  It is <u>not</u> the case, as it is when construing a "broad" arbitration clause, that collateral disputes will generally be subsumed by a "narrow" clause.  <u>See</u> <u>id.</u> at 225 ("We think making a distinction between broad and narrow arbitration clauses is necessary and sound, as the 'scope of an arbitration clause, like any contract provision, is a question of the intent of the parties.' . . . [T]he intended scope of a narrow arbitration clause is obviously more limited.") (quoting <u>Mineracao</u>, 745 F.2d at 193).  Indeed, these presumptions are reversed:  collateral matters are outside the purview of "narrow" arbitration clauses.  <u>Id.</u> ("[W]e consistently [have] held that matters collateral to an agreement fall outside the scope of a narrow arbitration clause").

Mr. Stevenson's illegal conduct starting in 1998 and culminating in a knowingly deceptive tax return in 2000, and his other breaches of fiduciary duty that occurred prior to the execution of the parties' Retention Agreement are not "under" or do not "arise under" that Agreement.  That Agreement expressly covers a "Retention Period" from March 4, 2002 through December 31, 2004.  <u>See</u> Retention Agreement, ¶2(a) (referring to ¶1(f)).  To the extent that Defendant's counterclaims are based on pre-Agreement conduct, therefore, they should not be compelled to arbitration under the Agreement pursuant to Second Circuit law.  The relevant dispute is simply not "over an issue that is on its face within the purview of the clause."  <u>Id.</u> at 224 (citations omitted).

**B.**     **The Court Should Adjudicate Counterclaims Based Upon Pre-Agreement Conduct And Submit Post-Agreement Counterclaims To Arbitration Even Though The Result Is Bifurcated Or "Piecemeal" Litigation.**

Plaintiff derides Defendant's request that the Court retain jurisdiction over and adjudicate Defendant's counterclaim for breach of fiduciary duty while submitting Defendant's other counterclaims to arbitration.  <u>See</u> Letter from C. Reynolds to J. Karas, dated October 16, 2006, p. 2; <u>see also</u> Tyco's Memo. of Law in Support of Motion for Reconsideration, p. 2 (requesting

"that the Court clarify in the Order that Tyco's Counterclaims may proceed in this Court to the extent they involve claims or periods of recovery that are *not* covered by the claims considered in the arbitration."). However, contrary to Plaintiff's suggestion, Defendant's request that the Court bifurcate proceedings in this fashion is not a "red herring," but rather a request to the Court that it enforce the parties' agreement in accordance with binding legal precedent.

In his papers, Plaintiff cites the seminal case of <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213 (1985), for any number of well-established legal propositions regarding mandatory arbitration of claims. However, one section of <u>Byrd</u> that Plaintiff ignores is the passage in which the United States Supreme Court instructs lower courts to "rigorously enforce agreements to arbitrate, even if the result is '<u>piecemeal' litigation</u>," and thereby honor Congress' "preeminent concern" in passing the Arbitration Act – "to enforce private agreements." 470 U.S. at 221 (emphasis added). The Court of Appeals for the Second Circuit has echoed the U.S. Supreme Court on this score stating that "[i]f some claims are non-arbitrable, while others are arbitrable, then we will sever those claims subject to arbitration from those adjudicable only in court. *Indeed, there is no reason why, in a proper case, we cannot sever even part of a claim, where the claim raises both arbitrable and non-arbitrable issues*." <u>Collins</u>, 58 F.3d at 20 (emphasis added).

There is nothing novel or unorthodox about Defendant's request that the Court bifurcate proceedings, and compel some claims to arbitration while retaining jurisdiction over and adjudicating another claim. Nor does federal policy in any way disfavor the type of bifurcated proceedings that Defendant requests. <u>See</u>  <u>id.</u> ("[Plaintiff] contends that, because one of the claims is clearly arbitrable, and because all of the claims are related to a single set of facts,

6

federal policy disfavors a bifurcation of proceedings…. This argument is frivolous. The Supreme Court has directly addressed and soundly rejected it"). Indeed, the U.S. Supreme Court has held that bifurcated or "piecemeal" litigation is the proper course of action where some but not all claims among and between the parties fall within the purview of the parties' arbitration agreement. See Byrd, 470 U.S. at 221; Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp., 460 U.S. 1, 20 (1983) ("[T]he relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement.") (emphasis in original).

## III.   CONCLUSION

For the foregoing reasons, Defendant-Counterclaimant Tyco International (US) Inc. respectfully requests that the Court deny Plaintiff's Cross-Motion to Compel Arbitration, and instead order that Tyco's Counterclaims, or parts thereof, may proceed in this Court because claims regarding pre-Agreement conduct do *not* arise under the Retention Agreement.


Dated:  New York, New York                      Respectfully submitted,
        January 3, 2007
                                                MORGAN, LEWIS & BOCKIUS LLP


                                                By:  /S/ Christopher P. Reynolds
                                                     Christopher P. Reynolds (CR-8338)
                                                     William J. Delany, Pro Hac Vice

                                                101 Park Avenue
                                                New York, New York  10178
                                                (212) 309-6000
                                                Attorneys for Defendant-Counterclaimant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused to be served a true and correct copy of the

foregoing *Opposition to Plaintiff's Cross-Motion to Compel Arbitration*, by e-mail

delivery on this 3rd day of January 2007, to:

Andrew J. Bernstein, Esq.
M. Alexis Pollock, Esq.
Dreier LLP
499 Park Avenue
New York, NY  10022
*Attorneys for Plaintiff*

<u>/S/ Christopher P. Reynolds</u>
Christopher P. Reynolds